UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-MJ-01160-RN-1

**United States of America**,

v.

**Carlos R. Velazquez**,

        Defendant.

**Order**

Defendant Carlos R. Velazquez seeks an order from this court suppressing evidence (captioned "motion to dismiss due to lack of articulable suspicion") obtained by the Government as a result of a vehicle stop on Ft. Bragg Military Installation on August 24, 2013. D.E. 20.

After conducting a hearing on the issue on August 23, 2016, the undersigned magistrate judge will grant the motion to suppress. The court finds that the Government did not have a reasonable suspicion that Velazquez was driving while impaired or that he had engaged in any criminal activity. Consequently, the traffic stop violated the protections afforded to Velazquez by the Fourth Amendment. Therefore, the evidence acquired as a result of the traffic stop is subject to suppression as unconstitutionally obtained.

**I.     Background**

Officer Ken Scott, a traffic investigator at Ft. Bragg was the sole witness for the Government at the evidentiary hearing. Audio Tr. of August 23, 2016 Hearing at 1:01:06–1:01:22.

As party of his duties on August 24, 2014, Officer Scott was in his vehicle, traveling north on Lamont Road, a road that is within the boundaries of the Fort Bragg Military Reservation, but is open to the public. *Id*. at 1:04:00–1:05:02, 1:05:34–1:05:38. Lamont Road is

adjacent to a Special Operations Compound on the right. *Id*. at 1:07:15–1:07:25. A fence topped with barbed wire separates the compound from Lamont Road. *Id*. at 1:07:26–1:07:30. The fence is adorned with signs identifying that prohibit entry into the Special Operations Compound. *Id*. at 1:07:31–45. Despite the sensitive nature of the compound itself, the public is not restricted from traveling on Lamont Road. *Id*. at 1:16:30–1:16:41; 1:17:30–1:17:35; *see also* D.E. 1.

Lamont Road ends at an intersection with Manchester Road. At the time of this incident, if a driver turned right from Lamont onto Manchester, he would encounter a closed gate with a "Do Not Enter" sign. *Id*. at 1:09:20–1:09:30. If a driver turned left from Lamont onto Manchester, the road would take him towards various training areas and, ultimately, the town of Southern Pines. *Id*. at 1:10:20–1:10:29.

Officer Scott described this area as wooded with no lighting with minimal, if any, phone and radio signals. *Id*. at 1:10:39–1:10:49. Officer Scott also stated that there are no individuals in that area at night. *Id*. at 1:11:16–1:11:22. Officer Scott also testified that he has often assisted individuals who were lost in the area, including those following GPS. *Id*. at 1:12:17–1:12:36. Officer Scott stated that he had often received calls of lost individuals utilizing GPS where the GPS would take them off the main road. *Id*.; *id*. at 1:17:01–1:17:15. He also stated that there are no phone signals and radios often do not operate in this remote area. *Id*. at 1:10:50–1:10:55.

Shortly after midnight on August 24, 2013, Officer Scott drove up behind Velazquez's vehicle, which was also traveling north on Lamont Road. *Id*. at 1:12:55–1:13:15. When Velazquez reached the stop sign at the intersection of Lamont and Manchester Roads, he properly stopped his car and made a right turn. *Id*. at 1:13:16–1:13:20.

After encountering the gate that prohibited access to the Special Operations Compound, Velasquez turned his car around and continued westbound down Manchester towards Southern

2

Pines. *Id*. at 1:13:26–1:13:35. Officer Scott, who had remained at the intersection after Velasquez turned right, followed Velasquez down Manchester Road and, believing him to be lost or intoxicated, pulled Velasquez over. *Id*. at 1:13:36–1:13:46. Evidence obtained from this traffic stop led to the charge pending against Velasquez.

## II. Motion to Suppress

Velazquez contends that the evidence obtained as a result of the traffic stop parcel should be suppressed because Officer Scott lacked a reasonable suspicion of criminal activity to initiate the stop. In response, the Government argues that the totality of circumstances give rise to a reasonable suspicion that criminal activity was afoot. The court disagrees and concludes that the traffic stop violated Velazquez's Fourth Amendment rights.

The Fourth Amendment to the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…." U.S. Const. amend. IV. When a police officer stops an automobile and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (noting that the Fourth Amendment's protection against "unreasonable searches and seizures" extends to "brief investigatory stops of persons or vehicles"). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810.

However, a vehicle stop is also permissible when there is a reasonable suspicion of criminal activity. *United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993).

3

> In determining whether an officer had reasonable suspicion, we view the totality of the circumstances to determine whether the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." Although the reasonable suspicion standard "defies precise definition," it is less demanding than probable cause and falls "considerably short of satisfying a preponderance of the evidence standard."

*United States v. Griffin*, 589 F.3d 148, 152 (4th Cir. 2009) (citations omitted). Under the Fourth Amendment, reasonableness is evaluated from an objective standpoint. *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *see also United States v. Cortez*, 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity").

In evaluating the appropriateness of a traffic stop, the court must conduct a two part inquiry. First, the court must first determine whether the officer's action was justified at its inception. *U.S. v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992). Second, it must examine whether the police officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *Id*. Only the first factor is at issue in this case.

Under the first prong, an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Terry*, 392 U.S. at 30. While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). The officer must be able to articulate more than an "inchoate and unparticularized suspicion or hunch of criminal activity. *Terry*, 392 U.S. at 27; *see also Navarette v. California*, --- U.S. ----, 134 S.Ct. 1683, 1687 (2014) ("Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the

4

evidence, and obviously less than is necessary for probable cause.") (internal quotations omitted). The central inquiry in discerning the legitimacy of a traffic stop is whether "the circumstances, viewed objectively, justify th[e] action." *See Whren*, 517 U.S. at 813 (internal quotation marks omitted).

Here, the evidence demonstrates that Velasquez was driving on a public road shortly after midnight on a Saturday morning. When he reached an intersection, he stopped completely and proceeded to make a right turn. After encountering a fence informing him he was not allowed to proceed further, Velasquez turned his vehicle around and proceeded down a public, albeit remote, road. At no time did Officer Scott observe any erratic driving, traffic violations, or other conduct that indicated Velasquez was intoxicated. There is no indication that there were concerns that Velasquez posed a threat to the physical security of the base or personnel or that he was seeking unauthorized access to the Special Operations Compound. Officer Scott's decision to pull Velasquez over appears to have been based entirely on his presence on a public road at night and his right turn at the intersection of Lamont and Manchester Roads. Given that Officer Scott was aware that individuals frequently became lost in this area and that GPS systems would often cause individuals to make wrong turns, these facts are insufficient to establish that Officer Scott's stop of Velazquez's vehicle was supported by reasonable suspicion of criminal conduct. S*ee, e.g., United States v. Romulus*, 949 F.2d 713 (1991) (driver's conduct in abruptly braking when he realized he was about to pass officer on highway, and in continuing to reduce speed in order to avoid passing officer, provided officer with reasonable articulable suspicion that driver was driving without license or under influence of alcohol, justifying investigatory stop), *cert. denied*, 503 U.S. 992 (1991); *State v. Barnard*, 362 N.C. App. 244 (2008) (defendant's 30 second delay at green traffic light, at 12:15 a.m., coupled with officer's cited experience that

5

slowed reaction time is an indicator of impairment, gave rise to a reasonable suspicion that defendant was driving while impaired and rendered the stop of his vehicle constitutionally permissible); *State v. Battle*, 109 N.C. App. 367 (1993) (investigatory stop of automobile by police officer was constitutional and evidence obtained as consequence was admissible where first officer, who had observed alcohol-impaired defendant in parked car, communicated request to second officer, who made the stop, to "be on the lookout" for that particular car based on the first officer's suspicion that defendant would drive away in the car); *State v. Jones*, 96 N.C. App. 389 (1989), *appeal dismissed, review denied*, 326 N.C. 366 (trooper's observation of driver traveling 20 miles per hour below speed limit on interstate highway and weaving within his lane gave trooper reasonable suspicion to conduct investigatory stop to determine whether driver was impaired, even though trooper observed no violation of traffic code). Consequently, the court will suppress the evidence obtained as a result of the stop.

**III.   Motion to Dismiss**

Following the hearing and the court's oral order granting Velazquez's motion to suppress, the Government moved to dismiss the Criminal Information. The motion to dismiss is granted.

**IV.   Conclusion**

Based upon the foregoing, the undersigned grants Velazquez's motion to suppress. D.E. 20. The court also grant's the Government's oral motion to dismiss the criminal complaint.

Dated: September 14, 2016

*Robert T. Numbers II*

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE